UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

**PROGRESSIVE SPECIALTY INSURANCE COMPANY,**
    Plaintiff,

v.

**ROBERT LOONEY *et al.*,**
    Defendants.

Case No. 4:23-cv-1534-CLM

## MEMORANDUM OPINION

J&D Transportation caused a disabled vehicle to roll off a trailer and onto the interstate where it struck a vehicle containing Robert Looney and Angel Wright. Looney and Wright sued J&D Transportation for their injuries in state court.

Progressive Specialty Insurance Company ("Progressive") insured J&D Transportation. Progressive filed a declaratory judgment action with this court, asking it to declare that Progressive has no duty to defend or indemnify J&D Transportation in the underlying state case. Progressive moves for summary judgment. (Doc. 29). For the reasons stated within, the court **GRANTS** Progressive's motion for summary judgment.

### BACKGROUND

The background facts are either undisputed or read in the light most favorable to Claimants as the nonmoving party. FED. R. CIV. P. 56; *see, e.g.*, *Warrior Tombigbee Transp. Co. v. M/V Nan Fung* 695 F.2d 1294, 1296 (11th Cir. 1983) ("All reasonable doubts about the facts should be resolved in favor of the non-movant.").

### I.    The Accident

Darius Zanders worked for J&D Transportation. On September 23, 2020, Zanders used one truck ("Unit 1") and trailer to tow a disabled truck ("Unit 2") that was parked on the shoulder of the interstate. While pulling

the disabled truck onto the trailer, the winch broke and the disabled truck rolled into oncoming interstate traffic, colliding with Claimants' vehicle.

## II.   Progressive's Policy

A. *The Policy*: At the time of the accident, Progressive insured J&D Transportation. (*See* Doc. 30-2, p. 11). Under the policy, Progressive had a duty to provide coverage for the following:

> Subject to the Limits of Liability, if **you** pay the premium for liability coverage for the **insured auto** involved, **we** will pay damages, other than punitive or exemplary damages, for **bodily injury**, **property damage**, and **covered pollution cost or expense** for which an insured becomes legally responsible because of an **accident** arising out of ownership, maintenance or use of that **insured auto**.

(Doc. 30-2, p. 43) (emphasis in original) (highlight added). The policy defined "insured autos" as follows:

> 6. "**Insured auto**" or "**your insured auto**" means:
>    a. any **auto** specifically described on the **declarations page**; or
>    b. An additional **auto** for Part I – Liability to Others and/or Part II – Damage to Your Auto on the date **you** become the owner if:
>       (i) **you** acquire the **auto** during the policy period shown on the **declarations page**;
>       (ii) **we** insure all **autos** owned by you that are used in **your** business
>       (iii) no other insurance policy provides coverage for that **auto**; and
>       (iv) **you** tell **us** within 30 days after **you** acquire it that **you** want **us** to cover it for that coverage.

(*Id.* at pp. 39-40) (emphasis in original). The policy explained that coverage for "insured autos" includes the following:

2

> B. When used in Part I – Liability To Others, **insured auto** also includes:
>
>    1. **Trailers** designed primarily for travel on public roads, while connected to **your insured auto** that is a power unit;
>
> …
>
>    3. Any **temporary substitute auto**;

(*Id.* at p. 44) (emphasis in original).

     B. *Coverage of Involved Vehicles*: It is undisputed that the incident in question involved a working truck (Unit 1), a disabled truck (Unit 2), and a trailer. What is disputed is whether Progressive's insurance policy covered either truck or the trailer at the time of the accident. The court's task is to determine whether that dispute is genuine under Rule 56.

## JURISDICTION

     Progressive is a citizen of Ohio; Defendants are citizens of Alabama; and the amount in controversy exceeds $75,000, exclusive of interest and costs. (Doc. 1). The court therefore has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

## STANDARD OF REVIEW

     1. *Substantive law*: Because the court is sitting in diversity, it applies Alabama substantive law. *See Palmer & Cay, Inc. v. Marsh & McLennan Companies, Inc.*, 404 F.3d 1297, 1310 (11th Cir. 2005).

     2. *Procedural law*: In reviewing a motion for summary judgment, the court views the facts and draws all reasonable inferences in the light most favorable to the non-moving party. *See Cuesta v. Sch. Bd. of Miami-Dade Cty.*, 285 F.3d 962, 966 (11th Cir. 2002). Summary judgment is appropriate when there is no genuine dispute of material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). But

3

where the evidence is merely colorable or not significantly probative, no genuine dispute of material fact exists, and summary judgment is appropriate. *Id.* at 249-50. Further, if the non-movant responds to the motion for summary judgment with just conclusory allegations, the court must enter summary judgment for the movant. *Peppers v. Coates,* 887 F.2d 1493, 1498 (11th Cir. 1989).

## DISCUSSION

### A. Jurisdiction / Ripeness

Before the court can address the merits, it must tackle Defendants' argument that the court must wait for the state court action to conclude before it decides (a) whether Progressive has a duty to defend and indemnify under the policy and (b) whether an MSC 90 endorsement requires Progressive to indemnify. Defendants point to previous Eleventh Circuit caselaw stating that whether an insurer has a duty to indemnify is **not** ripe for adjudication until the underlying state action is resolved. (*See* Doc. 33, p. 9). But the Eleventh Circuit's recent ruling in *Snell v. United Specialty Ins.*, 102 F. 4th 1208 (11th Cir. 2024), says otherwise. In *Snell*, an insured landscaper brought a declaratory judgment action against his insurance company, arguing that the insurer had the duty to defend and indemnify him under the controlling insurance policy. In its analysis, the Circuit Court said that the "reading of Alabama law–*i.e.,* as prohibiting a decision on the duty to indemnify until the underlying case goes to judgment–is incorrect." *Id.* at 1217. The court said it was unaware of any authority "holding that the duty to indemnify under Alabama law may not be decided before judgment in the underlying litigation." *Id.* at 1218. So this court finds that it can presently decide Progressive's motion.

### B. Coverage

There are three ways Defendants can show that Progressive has a duty to indemnify J&D Transportation: (1) one of the trucks was covered by the policy, (2) the trailer was covered by the policy, or (3) the MSC 90 endorsement applies to the accident. The court addresses each below.

4

### 1. The trucks (Units 1 and 2)

The policy covered four categories of vehicles: (a) an insured auto, (b) additional auto, (c) replacement auto, or (d) a temporary auto. Of these, Defendants argue that Units 1 and 2 were additional autos, covered by the following language:

> b. An additional **auto** for Part I—Liability To Others and/or Part II—Damage To Your Auto on the date **you** become the owner if:
> (i) **you** acquire the **auto** during the policy period shown on the **declarations page**;
>
> (ii) **we** insure a**ll autos** owned by **you** that are used in **your** business;
> (iii) no other insurance policy provides coverage for that **auto**; and
> (iv) **you** tell **us** within 30 days after **you** acquire it that **you** want **us** to cover it for that coverage.

As you can see, the four conditions are joined by the word "and," meaning that all four must be present for "additional auto" coverage to apply.

a. *Unit 1*: Mixed Motion LLC (not J&D Transportation) bought Unit 1 in April 2020, a few months before J&D Transportation's policy period began on June 8, 2020. Defendants provide no evidence of the date—if any—that J&D Transportation purchased or otherwise acquired Unit 1 from Mixed Motion LLC. So Defendants fail two of the four requirements for additional autos: (i) that J&D Transportation acquire Unit 1 during the policy period and (iv) that J&D Transportation tell Progressive about the acquisition within 30 days. And Defendants fail to provide evidence that J&D Transportation owned Unit 1 on the date of the accident (September 23, 2020), so coverage would not apply even if J&D Transportation acquired Unit 1 and met the four requirements by purchasing it from Mixed Motion LLC *after* the accident.

b. *Unit 2*: Defendants present evidence that J&D Transportation purchased Unit 2 on September 30, 2020, and that J&D told Progressive about the purchase within 30 days. So all four requirements are met. That said, the introductory clause says that Part I Liability coverage begins "on

5

the date **you** become the owner[.]" If Defendants prove that J&D Transportation bought Unit 2 one week after the accident, then they necessarily prove that liability coverage did not apply. As a result, no reasonable juror could find that either Unit 1 or 2 was an additional auto covered by the policy when the accident occurred on September 23, 2020.

### 2. The trailer

Progressive covered 17 of J&D Transportation's trailers. In their briefing, the parties disputed whether Defendants could identify the trailer involved in the September 23rd accident as one of the 17. Defendants pointed to a Bill of Sale with a VIN number that matched one of the 17 trailers listed on the declarations sheet. (Doc 32-6). Progressive countered that there was no proof that the listed trailer was at the scene, and even if it was, the Bill of Sale that Defendants produced indicated that J&D Transportation sold the trailer to Pike Manor, LTD on September 17—*i.e.*, a week before the accident.

The court found this dispute confusing, not genuine. So it invoked Rule 56(e)(1) to give Defendants the chance to explain (a) how they could prove the trailer identified in the Bill of Sale was involved in the accident, and if it was, (b) how the trailer could be covered if the same Bill of Sale showed that J&D Transportation sold the trailer a week earlier. The court told Defendants a day in advance what it would be asking. During the conference call, Defendants' counsel admitted that she could not provide any other evidence supporting Defendants' assertion that the trailer was present at the scene. So the court finds that there is no *genuine* dispute whether a covered trailer was involved in the accident, meaning that no trailer provides the vehicle with liability coverage.

### 3. MCS 90 endorsement

Finally, the policy contained this MCS-90 endorsement that would require Progressive to cover liability even if the policy didn't apply:

6

> In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo. It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon,

Stated simply, this clause invokes the Motor Carrier Act to require Progressive to cover public injuries caused by commercial vehicles carrying goods. As noted by the Circuit Court, for this provision to apply, a motor carrier must have been in "the business of transporting, for compensation, the goods or property of another." *Nat'l Specialty Ins. v. Martin-Vegue*, 644 Fed.Appx. 900, 907 (11th Cir. 2016) (*citing* 49 C.F.R. § 387.5).

Defendants present no evidence that J&D was transporting goods for someone else when J&D Transportation caused Claimants' injuries. Rather, J&D was picking up a disabled vehicle that it bought a week later. So the MCS-90 endorsement does not apply.

—

To sum up, Defendants present no evidence that would allow a reasonable juror to find that Progressive's policy covered either truck or the trailer involved in the September 23, 2020 accident. So Progressive is entitled to judgment on its claim for a declaration of non-coverage.

## CONCLUSION

For these reasons, the court **GRANTS** Progressive's Motion for Summary Judgment, (doc. 29). The court will enter a separate order consistent with this memorandum opinion that closes this case.

**DONE** and **ORDERED** on September 2, 2025.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE